UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| JOHN A. O'NEILL, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-1181 |
|  | ) | |
| v. | ) | Honorable Joseph G. Scoville |
|  | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
|  | ) | **OPINION** |
| Defendant. | ) ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of only the unfavorable portions of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB) and granting in part and denying in part his claim for Supplemental Security Income (SSI) benefits. On August 24, 2009, plaintiff filed the applications for DIB and SSI benefits giving rise to this appeal.[1] (A.R. 212-19). Administrative *res judicata* stemming from the denial of plaintiff's earlier claims for social security benefits on April 23, 2009 (A.R. 112-25) precluded any date for onset of disability before April 24, 2009. Plaintiff's disability insured status expired on December 31, 2009. Thus, it was plaintiff's

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2009 is plaintiff's earliest possible entitlement to SSI benefits.

burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before December 31, 2009. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims for DIB and SSI benefits were denied on initial review. On May 3, 2011, plaintiff received a hearing before an ALJ, at which he was represented by counsel. (A.R. 28-69). On May 13, 2011, the ALJ issued a decision finding that plaintiff was disabled and entitled to SSI benefits on and after July 18, 2010. This was only one day before plaintiff's 50th birthday -- the occasion under the social security regulations when his age classification changed from a younger individual to a person "closely approaching advanced age." 20 C.F.R. §§ 404.1563(c), (d), 416.963(c), (d). The ALJ found that plaintiff was not disabled during the period from April 24, 2009, through July 17, 2010. (A.R. 12-22). On September 8, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the unfavorable portions of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 11). Plaintiff asks the court to overturn the unfavorable portions of the Commissioner's decision on the following grounds:

1. "THE COMMISSIONER'S ALJ/APPEALS COUNCIL[2] MISAPPLIED THE AGE RULES IN ASSESSING MR. O'NEILL'S DISABILITY, WHEN MR O'NEILL WAS IN A 'BORDERLINE' CATEGORY UNDER THE COMMISSIONER'S

---

[2]Plaintiff's arguments that the Appeals Council committed errors must be ignored. The Appeals Council denied review. The scope of the court's review is defined by statute, and does not encompass the Appeals Council's discretionary decision whether to grant review. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.").

    REGULATIONS, AND WAS AS DISABLED IN DECEMBER, 2009, AS HE WAS IN JULY, 2010, THE ONLY DIFFERENCE IN THOSE TWO DIFFERENT PERIODS BEING THE IMMINENT PASSAGE OF MR. O'NEILL'S 50TH BIRTHDAY[;]" and

  2. "THE COMMISSIONER ERRED AT LAW AND IN FACT BY MISAPPLYING THE COMMISSIONER'S 'SEVERITY' REGULATION WHEN THE COMMISSIONER FOUND THAT MR. O'NEILL DID NOT SUFFER FROM ANY 'SEVERE' PSYCHOLOGICAL IMPAIRMENT PRIOR TO MR. O'NEILL'S DECEMBER 31, 2009 DATE LAST [DISABILITY] INSURED, AND WHEN, HAD THE ALJ PROPERLY APPLIED THE 'SEVERITY' REGULATION, THE COMMISSIONER'S VOCATIONAL EXPERT'S TESTIMONY WOULD HAVE COMPELLED A CONCLUSION OF DISABILITY NOT LATER THAN DECEMBER 4, 2009[.]"

(Statement of Questions Presented for Review, Plf. Brief at iv, docket # 12). Upon review, a judgment will be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, No. 12-3553, __ F.3d __, 2013 WL 896255, at * 7 (6th Cir. Mar. 12, 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 24, 2009, through December 31, 2009, but not thereafter. (A.R. 14). Plaintiff had not engaged in substantial gainful activity on or after April 24, 2009. (A.R. 14). Plaintiff had the following severe impairments: "degenerative joint disease of the hips, ankles and back; right eye blindness since 1984; arthritis and myalgias; [and] seronegative spondyloarthropathy." (A.R. 14-15). The ALJ found that plaintiff did not have an impairment or

combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that since April 24, 2009, claimant has [retained] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following: he can lift 10 pounds occasionally; he can sit for 6 hours in an 8-hour workday; he can stand and walk for 2 hours in an 8-hour workday; he can occasionally operate foot controls with bilateral lower extremities; he can occasionally climb ramps [and] stairs; he can never climb ladders, ropes or scaffolds; he can frequently balance, stoop, kneel, crouch and crawl; he requires jobs allowing objects to be presented from the left side; he cannot work in an area with concentrated exposure to extreme cold or extreme heat; he cannot work in an area with concentrated exposure to humidity; he cannot work around hazards including unprotected heights and cannot engag[e] in all operational control of moving machinery.

(A.R. 18). The ALJ found that plaintiff's subjective complaints were not fully credible:

> Claimant alleged an inability to work due to widespread and persistent pain involving such areas as his neck, shoulders, low back, hips, buttocks, legs, hands and ankles. Claimant averred that his pain was accentuated by many physical activities, temperature and humidity extremes, and only partially attenuated with medication, injections, reclining and rest. Claimant reported extremity numbness, as well as decade's long right eye blindness. According to claimant, his conditions limit his ability to lift, stand, walk, sit, bend, reach, kneel, climb, concentrate, remember or persist on tasks.
>
> After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.
>
> Specifically, no treating physician imposed a work preclusive limitation on claimant's functioning, or opined that he was totally disabled or more limited than the residual functional capacity adopted. I note the results of CT, EMG, radiographic, serology and clinical evaluations, which do not unveil totally debilitating pathology. While claimant certainly has serious orthopedic maladies, during the period at issue imaging studies were negative for herniation, stenosis, frank cord or nerve root embarrassment. Electromyographic analysis reflected no brachial plexopathy, polyneuropathy, radiculopathy, or other underlying electrodiagnostic distortion. Chemistry panels, including inflammatory markers, were generally within normal limits.

Clinicians observed claimant ambulate without an assistive device, and on most occasions, to retain functional range of motion. Claimant's neurological functions in terms of motor power, reflex activity, coordination, balance and sensation were largely intact, and his musculoskeletal and extremity reviews were free of clubbing, cyanosis, edema, heat, discoloration, ulceration or diminished pulsation. The evidence does not fully support claimant's contentions as to the magnitude of his symptomatology and dysfunction, including his expressed level of pain and fatigue, and reported need to take breaks, lie down and nap for extended intervals on most days. Claimant is not a wholly credible individual. During the hearing, claimant originally testified that he had not consumed alcohol in approximately two years' time. His assertions were promptly amended when references in the record refuted his statements (The record shows ethanol use as recent as March 2011). Claimant's presentations when examined during attorney referrals, seemed to notably contrast with examination findings completed by clinicians who maintained on ongoing relationship. While no doubt limited to some extent, within testimony or the written record, it was reported that claimant performed certain self-care tasks, completed light cleaning chores, folded laundry, shopped, read the sports page, watched television, spent time with family and enjoyed attending his children's school and extracurricular activities (Exhibits B5E, B6E, Bl2F).

I give significant weight to nonexamining DDS physician, S. Mohiuddin, M.D., who found that claimant had medically determinable impairments, but retained the capacity to perform a range of sedentary work on a sustained basis, within which a significant number of jobs existed. This viewpoint is consistent with the evidence in its entirety. I grant limited weight to H. Burdick, M.D., who saw claimant at counsel's request (Exhibit B17F). In a March 2010 report, Burdick declared claimant to be totally incapacitated from any gainful employment. It is noted that during this appraisal, claimant would not move his spine to any meaningful degree. Yet, during subsequent evaluations not conducted to obtain evidence of a disabled status, claimant's spinal mobility and overall presentation were less inhibited. Burdick's assessment is not well supported or persuasive, given competing evidence in the case file. Finally, I am aware that consultative examiner Lehmann, a limited licensed psychologist, opin[ed] that claimant's physical problems seem to significantly restrict his ability to work and that his level of pain, would cause problems with concentration or decision making. Lehmann steps outside of her area of expertise, and her views in this respect are not adopted. As discussed heretofore, in the vast majority of presentations, claimant demonstrated good orientation, awareness, responsiveness, and attentiveness.

Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), where the final decision of the Social Security Administration after a hearing on a prior disability claim contains a finding of the demands of a claimant's residual functional capacity, the demands of a claimant's past relevant work, or other finding required at a step in the sequential evaluation process for determining disability provided under 20 CFR 404.1520, 416.920, or 416.924, as appropriate, the Social Security Administration may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the

> same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding.
>
> The residual functional capacity (RFC) adopted is largely consistent with that delineated in a previous April 23, 2009, unfavorable hearing decision. Based on evidence supplied subsequent to that decision, I have reached a slightly more restrictive RFC (no "bilateral foot pedal manipulation; no climbing of ladders, ropes and scaffolds["]) than did the prior tr[i]er of fact.

(A.R. 19-20).

Plaintiff was unable to perform his past relevant work. (A.R. 20). Plaintiff was classified as a younger individual at all times relevant to the claims for DIB and SSI benefits under review. (A.R. 20). On July 18, 2010, plaintiff's age category changed to an individual closely approaching advanced age. (A.R. 20). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 21). The transferability of work skills was not material to a disability determination before July 18, 2010. (A.R. 21). On and after July 18, 2010, the transferability of work skills was material, and plaintiff lacked transferable job skills. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately 6,200 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 65-67). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled at any time before July 18, 2010. The ALJ found that on and after July 18, 2010, plaintiff was disabled and entitled to SSI benefits.[3] (A.R. 21-22).

---

[3]The ALJ found that plaintiff's substance use disorder was not a contributing factor material to the determination of disability. (A.R. 22).

**1.**

Plaintiff argues that the ALJ committed reversible error by "mechanically" applying the age rules in a "borderline" situation and that he should have found that plaintiff was disabled before his disability insured status expired. (Plf. Brief at 4-6). The hearing transcript shows that the ALJ was very familiar with the applicable regulations regarding a claimant's age. (A.R. 43-44). The regulations state as follows:

> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b); *see* 20 C.F.R. § 416.963(b). "Nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v. Commissioner*, 539 F.3d 395, 399 (6th Cir. 2008). Plaintiff was not "within a few days" of reaching an older age category. He did not reach the category of a person "closely approaching advanced age" until more than seven months after his disability insured status expired. Seven months is more than "a few months." *See Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012)(collecting cases). "The fact that age categories are not to be applied mechanically, [] obviously does not mean that a claimant must be moved mechanically to the next age category whenever h[is] chronological age is close to that category." *Van der Maas v. Commissioner*, 198 F. App'x. 521, 528 (6th Cir. 2006); *see Caudill v. Commissioner*, 424 F. App'x 510, 516-18 (6th Cir. 2011). The court finds no error.

**2.**

Plaintiff argues that the Commissioner should have found that he had a severe psychological impairment before his disability insured status expired. (Plf. Brief at 6-9). The finding of a severe impairment at step 2 of the sequential analysis is a threshold determination.[4] The finding of a single severe impairment is enough and requires continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had severe impairments: "degenerative joint disease of the hips, ankles and back; right eye blindness since 1984; arthritis and myalgias; seronegative spondyloarthropathy." (A.R. 14-15). The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir.2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). The ALJ continued the sequential analysis and considered plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC. (A.R. 13-14, 18-20).

---

[4]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner,* 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

**3.**

The issues raised in plaintiff's "Statement of Questions Presented for Review" have been addressed. (Statement of Questions Presented for Review, Plf. Brief at iv, docket # 12). This should end the court's analysis, because issues not presented in the plaintiff's statement of errors are considered waived. *See Ealy v. Commissioner*, 594 F.3d 504, 513 (6th Cir. 2010); *York v. Astrue*, No. 3:12-cv-188, 2013 WL 796288, at * 5 (S.D. Ohio Mar. 4, 2013); *Oudsema v. Commissioner*, No. 1:11-cv-1264, 2013 WL 588925, at * 5 (W.D. Mich. Feb. 13, 2013).

Plaintiff's brief ends with the footnote quoted below, alluding to other issues:

> The ALJ additionally erred from a factual perspective when he rejected the opinion of Harry Burdick, M.D., the orthopedist who evaluated Mr. O' Neill on March 9, 2010 (as well as on April 6, 2007), while at the same time giving "significant weight" to non-examining Disability Determination Service records reviewers (ALJ Op. at 6; 9).
>
> It is additionally noteworthy to highlight a troublesome exchange between ALJ Jones and Mr. O'Neill in the early minutes of the May 3, 2011 hearing. ALJ Jones, in examining Mr. O'Neill's housing circumstances, learned that Mr. O'Neill lived in a subsidized rental unit, and that a subsidized housing authority paid Mr. O'Neill a modest supplement - $21.00 per month - in some kind of rent subsidy. The ALJ, glibly, made light of the fact that some housing authority "paid" Mr. O'Neill to live in an apartment. Such an exchange was predictive of the rather capricious outcome ALJ Jones directed.
>
> Mr. O'Neill's attorney is assigning these above depicted issues to a footnote not because Mr. O'Neill and his counsel do not consider these issues serious, but because they are of lesser importance, from the perspective of misapplication of the law, than those arguments highlighted in the body of this brief. Those arguments from this brief's body are the ones most likely to compel this Court to intervene, affording effective and appropriate appellate relief.

(Plf. Brief at 8 n.1).

Counsel presents no developed argument and cites no supporting legal authority. This constitutes a second level of waiver. Issues raised in a perfunctory manner are deemed waived.[5] *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012). Even assuming that these issues had not been waived by their insouciant presentation, they are meritless.

A. <u>Dr. Burdick</u>

On March 9, 2010, Dr. Burdick conducted a consultative examination on a referral from plaintiff's attorney.[6] (A.R. 524-26). The purpose of the appointment was "to authenticate this patient's apparent disability." (A.R. 524). Dr. Burdick reviewed the records plaintiff supplied, conducted an examination of unspecified duration, recorded plaintiff's subjective complaints, and offered his opinion that plaintiff was "totally incapacitated from any gainful employment at this time." (A.R. 526). The issue of disability is reserved to the Commissioner, and the consultative examiner's opinion that plaintiff was disabled was entitled to no weight. 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3).

In addition, the administrative decision denying plaintiff's earlier claim for social security benefits established that plaintiff retained the RFC for a limited range of sedentary work on and before April 23, 2009. (A.R. 112-25, 130-32). Under the *res judicata* rule of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of the claimant's residual functional capacity or other findings required at

---

[5]Plaintiff's attorney filed a 9-page brief. Suffice it to say that he had plenty of room remaining under the 20-page limitation within which to develop his arguments and support them with legal authority.

[6]Dr. Burdick had conducted a similar evaluation in April 2007 in connection with plaintiff's earlier unsuccessful claims for DIB and SSI benefits. (A.R. 112-25, 368-71).

a step of the sequential evaluation process." *Caudill v. Commissioner*, 424 F. App'x 510, 514 (6th Cir. 2011); *see Haun v. Commissioner*, 107 F. App'x 462, 464 (6th Cir. 2004). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514. Among other things, the ALJ noted: "[N]o treating physician imposed a work preclusive limitation on claimant's functioning, or opined that he was totally disabled or more limited than the residual functional capacity adopted." (A.R. 19). Plaintiff's objective test results did not indicate any debilitating pathology. (A.R. 19). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The court finds no error in the weight the ALJ determined was appropriate for the opinions expressed by consultative examiner Burdick.

  B. <u>ALJ Bias</u>

    Plaintiff's veiled assertion that the ALJ's decision should be overturned because he was somehow biased against plaintiff is utterly frivolous. The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment

is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Plaintiff states that the ALJ "glibly" questioned plaintiff during the hearing on May 3, 2011. (Plf. Brief at 8 n.1). The transcript reveals that the ALJ asked routine questions regarding plaintiff's living arrangements and sources of income:

```
Q     Okay. And do you live in a house, an apartment? What kind of --
A     Apartment.
Q     Who do you live with?
A.    My one daughter.
Q     How old is she?
A     She's 19. She goes to school, but she's there, you know, a few days a week.
Q     She goes to school, but she what?
A     Yeah. She lives with me, but she's only there two to three days a week.
Q     At your apartment?
A     At the apartment, yeah.
Q     Oh okay. And the rest of the time she's at school?
A     Yeah.
Q     Oh Okay. You pay any rent there?
A     Yes.
Q     How much is your rent?
```

| | | |
|---|---|---|
| A | | It's based on my pay right now.  I don't pay anything right now.  Actually, they pay me $21 [laughs] to live there. |
| Q | | Who does? |
| A | | My apartment building.  They help me [inaudible]. |
| Q | | Is it the government or something? |
| A | | Huh? |
| Q | | The government? |
| A | | Yeah. |
| Q | | The government's paying you $21 a month to live in your apartment? |
| A | | Well, til this is over, till this is done, then it goes back up.  Because I'm not working -- I haven't worked, so I don't have any income.  And they were going by my daughter's income because for her, then she's going to school.  So we get to stay here for this. |
| Q | | Okay. |

(A.R. 33-34).  There was nothing objectionable in the ALJ's questioning.  Plaintiff's attorney did not object.  (*Id.*).  Plaintiff was the one who laughed about "the government" paying him to live in an apartment.  The argument that the ALJ "glibly" asked plaintiff questions is a complete waste of the court's time.  The court finds no evidence that the ALJ was biased against plaintiff or his attorney, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

## Conclusion

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.


Dated:  April 9, 2013                     /s/  Joseph G. Scoville
                                          United States Magistrate Judge